STATE OF CONNECTICUT *v.* TROY MOZELL
(13828)

DUPONT, C. J., and SPEAR and HENNESSY, Js.

Argued February 7—decision released April 25, 1995

*Gerald Bodell,* special public defender, for the appellant (defendant).

*Ronald G. Weller,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John M. Waddock,* assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant appeals from a judgment of conviction of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a)[1] and 53a-54a (a),[2] and murder as an accessory in violation of General Statutes §§ 53a-8[3] and 53a-54a (a).[4] On appeal, he claims that the trial court improperly (1) admitted prior inconsistent statements[5] as substantive evidence and (2) denied his motion for judgment of acquittal, which alleged that (a) the convictions were improperly based solely on the prior inconsistent statements, (b) prosecutorial misconduct during closing arguments deprived him of a fair trial, (c) the evidence was insufficient to convict him of conspiracy to commit murder and (d) he was denied his right to a speedy trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 27, 1989, Thomas Sanders was selling drugs in front of a house located at 2 Arthur Street in New Haven. Shelton Tucker, who lived in the house, told Sanders to leave. When Sanders refused, Tucker's cousin, Rodney Lewis, came outside and pushed Sanders. Sanders then left the area.

---

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[4] See footnote 2.

[5] This claim also includes the admissibility of a photograph identified by a witness and a tape recording of the witness' prior inconsistent statement.

On the next evening, Sanders returned with his brother, Robert Henderson, and some friends. Henderson confronted Tucker and asked him whether he had beaten up Sanders. When Tucker replied that he had not, Henderson and the others left the area. On December 29, 1989, Tucker and Lewis were in front of 2 Arthur Street when a Jeep Cherokee carrying four passengers, including the defendant, drove past them. The defendant fired approximately six to eight shots at Tucker and Lewis from the Jeep, but they were not injured. Later that same day, Tucker and Lewis saw the same jeep being driven on Arthur Street. Four members of the Island Brothers gang, one of whom was the defendant, exited the Jeep and commenced shooting at Tucker and Lewis. Although Tucker and Lewis escaped harm, Robert Coleman, an innocent bystander, was shot in the chest and died from that wound.

## I

The defendant's first two claims, which involve the admission and use of prior inconsistent statements, will be discussed together because they both turn on the application of *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The defendant argues that the trial court improperly admitted into evidence for substantive purposes the prior inconsistent statements of Lewis, Tucker and Larry Johnson.[6] He argues that the statements were not given under circumstances reasonably assuring their reliability as required by *State* v. *Whelan*, supra, 743. We disagree.

The following additional facts are necessary for the disposition of this issue. Shortly after the shooting,

---

[6] Although the defendant claims that prior inconsistent statements of three people were admitted into evidence, the record reflects that only the statements of Lewis and Tucker were admitted for substantive purposes. Therefore, we will review the admissibility of these statements only.

three witnesses, Tucker, Lewis and Johnson, gave statements to the police implicating the defendant. At trial, the three witnesses were called to the stand to testify, but none implicated the defendant in the shooting. Lewis testified that he had not seen the defendant at the time of the shooting. Tucker testified that, although he could remember the defendant's being involved in the shooting earlier that day, he could not remember if the defendant had been involved in the later shooting. Johnson testified that the defendant was not involved in the shooting.

The state then sought to introduce Lewis' and Tucker's prior inconsistent statements for substantive purposes. The trial court admitted into evidence a tape-recorded statement that Lewis gave to the police shortly after the fatal shooting in which he stated a number of times that the defendant was involved in the shooting. The trial court also admitted into evidence Tucker's prior written statement,[7] which was made shortly after the shooting. In the written statement, Tucker stated that the defendant was involved in the shooting.

It is well established in Connecticut that an exception to the hearsay rule allows the substantive use of prior inconsistent statements if certain conditions that tend to ensure their reliability have been satisfied. In *State* v. *Whelan*, supra, 200 Conn. 753, our Supreme Court adopted a rule "allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." *Whelan* and its progeny make clear that this exception applies to tape-recorded statements as well because "prior tape recorded state-

---

[7] The state also offered a photograph of the defendant that Tucker identified as the person involved in the shooting.

ments possess similar indicia of reliability and trust-worthiness to allow their substantive admissibility as well." Id., 754 n.9; see also *State* v. *Borrelli*, 227 Conn. 153, 158 n.5, 629 A.2d 1105 (1993); *State* v. *Woodson*, 227 Conn. 1, 21, 629 A.2d 386 (1993).

The prior inconsistent statements admitted into evidence in this case fall squarely within the *Whelan* rule. Both declarants witnessed and had personal knowledge of the incident. They both testified and were available for cross-examination. Tucker's prior statement was written and signed by him, and Lewis' statement was tape-recorded.

Despite the fact that the *Whelan* criteria were met, the defendant claims that the statements were made under circumstances that would not guarantee their reliability. Specifically, he argues that the statement is inherently unreliable because Lewis was fifteen years old and his parents were not notified that he would be asked to give a statement. He also argues that Tucker's prior statement is unreliable because it was "spoon-fed" by the police, and he wanted to change the statement both when it was given and later at court. We are unpersuaded by the defendant's arguments.

Both statements were given under circumstances that reasonably assured their reliability. First, each statement was given on the day of the shooting when the event was fresh in the declarants' memories. See *State* v. *Whelan*, supra, 200 Conn. 754. Second, each statement was given to a police officer. This adds to their reliability because, if the statements were false, the declarants could have faced criminal charges.[8] Id., 754–55. Finally, the declarants testified at trial and were available for cross-examination by the defendant. This gave the jury "an adequate opportunity to observe and examine the demeanor of the witness[es], to hear

---

[8] The minor declarant could have faced delinquency charges.

the testimony and to assess [their] credibility." Id., 755. As these factors assure the reliability of the declarants' prior inconsistent statements, the trial court properly admitted them into evidence for their substantive use.

The defendant alternatively argues, without citing authority, that even if the prior inconsistent statements were properly admitted into evidence, they cannot be the sole basis of conviction. We conclude that the statements were supported by corroborating evidence: the nine millimeter bullets found at the defendant's home matched the bullets from the earlier incident in which the defendant fired shots at Tucker and Lewis, and the same vehicle was used in both shooting incidents.

## II

The defendant's claims of prosecutorial misconduct, insufficiency of the evidence as to the conspiracy conviction and denial of his right to a speedy trial were inadequately briefed. The defendant's failure to present an adequate brief precludes review of these claims. "We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991).

## A

The defendant briefed the prosecutorial misconduct issue in one short paragraph. The prosecutor argued to the jurors that, on the basis of the evidence, they could find that Lewis, Tucker and Johnson had changed their stories out of concern for their personal safety. The defendant failed to cite a case or any other authority for his assertion that the prosecutor's remarks constituted misconduct.

## B

The defendant also claims that the evidence was insufficient to convict him of conspiracy to commit murder.[9] The defendant also briefed this issue in one short paragraph and failed to provide any legal analysis or to cite any authority.

## C

The defendant's final claim is that his right to a speedy trial was violated, and, therefore, the trial court should have granted his motion for judgment of acquittal. We note that the defendant first asserted his right to a speedy trial *after* the trial. He argues that he was prejudiced by the three and one-half year delay between his arrest and trial because it prevented him from producing "certain witnesses." The defendant has provided nothing to show who these witnesses were, to what they would have testified or why they were unable to be produced at trial.

To support this claim, the defendant cites two Connecticut cases. *State* v. *Davis*, 192 Conn. 739, 474 A.2d 776 (1984) (twenty-six month delay did not violate defendant's right to speedy trial); and *State* v. *Johnson*, 190 Conn. 541, 461 A.2d 981 (1983) (no denial of right to speedy trial where there was sixteen month delay and defendant moved to dismiss fourteen months after arrest). He does not provide an analysis as to how these cases support his claim, nor does he attempt to analogize from these cases. The defendant also failed to address the test in *Barker* v. *Wingo*, 407 U.S. 514, 530,

---

[9] The heading to the defendant's claim is: "The evidence was insufficient to support a conviction of the defendant for perjury and therefore it should be reversed." As the defendant was never charged with perjury in this case and because the defendant refers to conspiracy in the body of this claim, it appears that the use of the word perjury in the heading was a mistake. We, therefore, regard this claim as a challenge to the sufficiency of the evidence on the conspiracy count.

92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), which sets forth the four factors that the court must weigh to determine whether the defendant's right to a speedy trial has been violated.

The judgment is affirmed.

In this opinion the other judges concurred.