STATE OF CONNECTICUT *v.* SANTOS MIRANDA
(14439)

Foti, Landau and Heiman, Js.

Argued February 20—officially released May 14, 1996

------

[6] This figure represents the debt found by the trial court in the amount of $9228.68 less the disallowed sum of $2009.12.

*Ernest J. Diette, Jr.,* for the appellant (defendant).

*Robert J. Scheinblum,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Elpedio Vitale,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgments of conviction, rendered after a court trial, of six counts of assault in the first degree[1] in violation of General Statutes § 53a-59 (a) (3),[2] and risk of injury to a child in violation of General Statutes § 53-21.[3] He claims that the evidence was insufficient to support the convictions. The defendant further claims that the trial court improperly restricted cross-examination of a witness and excluded certain testimony.

The central issue in this appeal is whether a person, who is not the biological or legal parent of a child and does not owe a legal duty to that child, can be convicted of assault in the first degree of that child absent evidence of either an overt act causing the injuries, or of aiding and abetting another in the commission of the crime. We conclude that under the circumstances of

---

[1] The defendant was charged with twenty-five counts of assault in the first degree. He was found not guilty of the remaining counts, all of which charged him with having either personally inflicted the victim's injuries, or having aided and abetted another in inflicting those injuries.

[2] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[3] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

this case, absent an overt act or an omission to act where there is a legal duty to do so, the defendant, a nonparent, could not be convicted under § 53a-59 (a) (3). We, therefore, reverse the judgment of the trial court in part.

The trial court could reasonably have found the following facts. On January 27, 1993, the defendant, age twenty-one, lived with his sixteen year old girlfriend, Dianek Rodriguez, and her two children in Meriden, having moved there in September, 1992. The defendant is not the father of either child, a boy, two years old, and a girl, the victim, four months old. He assumed responsibility for the welfare of both children and took care of them as if he were their father. He established a family-like relationship with the children and their mother.

On the evening of January 27, 1993, the defendant was in the shower when Rodriguez screamed that the baby was turning blue and could not breathe. The defendant went to help, saw the baby had turned purple, and the defendant began crying. He then picked up the baby, put her on her back, breathed into her mouth and pushed on her chest. Milk came from the baby's mouth and she began to breathe normally. The defendant went out of the apartment to place a 911 emergency call and returned to the apartment immediately afterward.

At approximately 8:05 p.m., Steven Cushing, a trained paramedic, arrived in response to the call. After observing and examining the child, he placed her in an ambulance, and rushed to Meriden Veterans Memorial Hospital. Because of the serious and extensive injuries to the child, she was transported by Life Star helicopter to Hartford Hospital, where she remained in intensive care for two and one-half days. She was discharged on February 5, 1993. The department of children and families took custody of the child and her brother.

Upon examination at Hartford Hospital, the child was found to be a textbook example of battered child syndrome.[4] She was found to have multiple rib fractures in the posterior area, multiple skull fractures, bruises to soft tissue areas, a brachial plexus injury, a rectal tear, and bilateral subconjunctival nasal hemorrhages. These injuries were sustained during three or more occasions of wilful and deliberate abuse.[5] Some of the injuries were fresh and some were five to ten days old. The rectal tear was a serious physical injury that created a risk of death because the child's intestine could have been perforated, resulting in an overwhelming infection.

The trial court found that the defendant was aware of the child's injuries and "[a]lthough he was so aware, he failed to act to help or aid her by promptly notifying authorities of her injuries, taking her for medical care, removing her from her circumstances and guarding her from future abuses."

The trial court concluded, as to the charges of assault in the first degree, that under these circumstances the defendant's "failure to aid the child demonstrates an extreme indifference to human life." His failure to act constitutes a "gross deviation from the standard of conduct that a reasonable person would observe in that situation," and his "conduct was reckless and caused serious physical injuries."

As to the one count of risk of injury,[6] the trial court concluded that, through his failure to act, the defendant,

---

[4] A child suffering from battered child syndrome would have certain types of injuries that were not sustained accidentally. Such a diagnosis "is often indicated when a child's injuries do not jibe with the history given by the parent." *State* v. *Dumlao*, 3 Conn. App. 607, 610, 491 A.2d 404 (1985).

[5] We take judicial notice that the child's mother has entered a plea of guilty under the doctrine of *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to charges relating to having caused these injuries to the child.

[6] The defendant was sentenced to a total effective sentence of forty years, consisting of ten years on the risk of injury count, consecutive to two fifteen

"unlawfully caused and permitted the child to be placed in such a situation that her life and limb were endangered and her health was likely to be injured; in fact her life was endangered and her health was injured and impaired."

The defendant claims that the evidence presented at trial was insufficient to convict him of either assault in the first degree or risk of injury to a child.

In reviewing claims of insufficiency, we first review the evidence presented at trial and construe it in the light most favorable to sustaining the trial court's finding of guilt. *State* v. *Stanley*, 223 Conn. 674, 677, 613 A.2d 788 (1992). We then look at the facts established at trial and the reasonable inferences drawn from those facts and decide whether the court could have reasonably concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Malone*, 40 Conn. App. 470, 480–81, 671 A.2d 1321 (1996). Our standard in reviewing the conclusions of the trier of fact is limited. *State* v. *Evans*, 203 Conn. 212, 238, 523 A.2d 1306 (1987). We will construe the evidence in the light most favorable to sustaining the trial court's judgment and will affirm the court's conclusions if reasonably supported by the evidence and logical inferences drawn therefrom. *State* v. *Wohler*, 38 Conn. App. 277, 281, 661 A.2d 103 (1995).

The question on appeal is not whether we believe that the evidence established guilt beyond a reasonable doubt, but rather whether, after viewing the evidence in the light most favorable to sustaining the judgment,

year sentences consecutive on each of two counts of assault in the first degree. As to the four other counts of assault in the first degree, the defendant received sentences of fifteen years concurrent to all other sentences. As part of a plea agreement, Rodriguez will receive a sentence of twelve years suspended after she serves seven years.

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Brown*, 235 Conn. 502, 510, 668 A.2d 1288 (1995). We give deference to the unique opportunity of the trier of fact to observe the conduct, demeanor and attitude of the trial witnesses and to assess their credibility. *State v. Cintron*, 39 Conn. App. 110, 119, 665 A.2d 95 (1995). The trial court's findings of fact are entitled to great weight; *State v. Osman*, 218 Conn. 432, 436, 589 A.2d 1227 (1991); but those findings are not conclusive. *State v. Cobbs*, 203 Conn. 4, 13, 522 A.2d 1229 (1987).

The defendant's claim of insufficiency of the evidence as to the charge of risk of injury to a child under § 53-21 is inadequately briefed.[7] He has neither cited authority nor provided any legal analysis. We are, therefore, precluded from reviewing this claim. *State v. Mozell*, 37 Conn. App. 574, 579–80, 657 A.2d 686, cert. denied, 234 Conn. 910, 660 A.2d 355 (1995).

While § 53-21 proscribes criminal omissions, such as a person's deliberate indifference to or acquiescence in creating a situation inimical to a child's physical welfare; *State v. Apostle*, 8 Conn. App. 216, 242, 512 A.2d 947 (1986); the same is not true of § 53a-59 (a) (3). A failure to act when one is under no legal duty to do so, thereby permitting a dangerous condition to exist, is not sufficient to support a conviction for assault in the first degree pursuant to § 53a-59 (a) (3).

---

[7] A claim of insufficient evidence, even if not preserved, is reviewable. *State v. Roy*, 233 Conn. 211, 212, 658 A.2d 566 (1995); *State v. Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993). When inadequately briefed, however, an issue is considered abandoned. We will not review an issue that has not been adequately briefed. *State v. Mozell*, 37 Conn. App. 574, 579–80, 657 A.2d 686, cert. denied, 234 Conn. 910, 660 A.2d 355 (1995). Even a claim of insufficiency must be adequately briefed by providing legal analysis and citing authority to be reviewable. Id., 580. The defendant's brief merely states the issue in its heading and nothing further. The defendant's brief addresses only the crime of assault in the first degree and the elements of that crime without addressing the crime of risk of injury.

Assault in the first degree under § 53a-59 (a) (3) requires that a defendant recklessly engage in conduct that creates a risk of death to another person and thereby causes serious physical injury to another person. *State* v. *Jupin*, 26 Conn. App. 331, 340, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). A person acts recklessly with respect to a particular result or a circumstance described by statute "when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. . . ." General Statutes § 53a-3 (13). The state of mind constituting recklessness may be inferred from conduct. *State* v. *Bunkley*, 202 Conn. 629, 645, 522 A.2d 795 (1987).

Generally, if the injury caused by the defendant's conduct is a foreseeable and natural result of that conduct, the defendant is criminally responsible. *State* v. *Spates*, 176 Conn. 227, 234–35, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979). That conduct, creating criminal liability, may be by an act or an omission to act if within the intendment of the statute. See *State* v. *Tomassi*, 137 Conn. 113, 119, 75 A.2d 67 (1950). Criminal liability may also arise not only by overt acts but by an omission to act where there is a legal duty to do so. 1 W. LaFave & A. Scott, Substantive Criminal Law (1986) § 3.3, p. 282.

The defendant's convictions under § 53a-59 (a) (3) were not based on facts found from the evidence presented that he either inflicted or aided and abetted another in inflicting the injuries suffered by the victim. The basis of the court's convictions is that the defendant knew or should have known of the child's injuries and did nothing, although he had a duty to do something. The court's determination that the defendant "had a duty to act to protect the health and well-being of the baby girl" is based on the undisputed evidence that the "defendant took on the responsibility for the care and

welfare of [both] children with the mother of these children."

Central to the fact-finding process is the drawing of inferences from the evidence or from the facts established by the evidence that the court deems to be reasonable and logical. *In re Keijam T.*, 221 Conn. 109, 123, 602 A.2d 967 (1992). The trial court could not reasonably and logically have found by direct evidence, or inferred from the evidence or facts established, that the defendant had a legal duty to the victim. Where a single fact is essential to proof of an element, such evidence must support the inference of that fact beyond a reasonable doubt. *State* v. *McDonough*, 205 Conn. 352, 355, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988). The facts that the defendant was a member of the household, that he considered himself the stepfather of the baby girl, and that he took on the responsibility of the care and welfare of that child do not establish a legal duty.

The existence of a duty is a question of law. Only if such a duty is found to exist does the court then determine whether the defendant violated that duty in a particular situation. *Shore* v. *Stonington*, 187 Conn. 147, 151–52, 444 A.2d 1379 (1982). While evidence may have been sufficient to establish that the defendant had a moral duty to act, it was not sufficient to establish that he had a legal duty to act. A legal duty is defined as "[a]n obligation arising from . . . the operation of the law . . . ." Black's Law Dictionary (6th Ed. 1990). A duty has been defined as an obligation, "whether imposed by the common law, statute, or contract . . . ." Ballentine's Law Dictionary (3d Ed. 1969). As a matter of law, no legal duty can be found to have existed under the particular circumstances of this case and, therefore, no conviction could be had pursuant to § 53a-59 (a) (3).

We have reviewed the defendant's remaining claims. After a thorough review of the record, transcripts and briefs and, after affording these claims the appropriate scope of review, we find the defendant's assertions to be without merit.

The judgment of conviction on the six counts of assault in the first degree in violation of § 53a-59 (a) (3) is reversed and the matter is remanded with direction to render judgment of not guilty on those charges; the judgment of conviction of risk of injury to a child in violation of § 53-21 is affirmed.

In this opinion the other judges concurred.